**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SAMANTHA DIGGS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:12-CV-01612-L** |
| | § | |
| **CITIGROUP, INC.** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS AND
<u>COMPEL ARBITRATION AND BRIEF IN SUPPORT</u>**

**KILGORE & KILGORE, PLLC**

JOHN H. CROUCH, IV
State Bar No. 00783906

3109 Carlisle, Suite 200
Dallas, Texas 75204
Telephone:  214/969-9099
Telecopier: 214/953-0133

ATTORNEYS FOR PLAINTIFF
SAMANTHA DIGGS

## TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     Background Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    AAA Arbitration Has Repeatedly Proved Unfair . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.     Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      The Agreement is Unenforceable due to Fraud,
                Mistake, or Prior Breach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        B.      The Arbitration Policy is Unconscionable . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        C.      Mandatory AAA Employment Arbitration
                Violates Public Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        D.      Defendant Contractually Waived Attorney's
                Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Signature . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

FEDERAL CASES

Adams v. Philip Morris, Inc., 67 F.3d 580, 584 (6th
Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Ameser v. Nordstrom, Cause No. 3:09-CV-0395-G
in the Northern District of Texas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cole v. Burns Int'l Security Services,105 F.3d 1465,
1482 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681,
687 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

First Options of Chicago, Inc. v. Kaplan,
514 U.S. 938, 944, 131 L. Ed. 2d 985,
115 S. Ct. 1920 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Floss v. Ryan's Family Steak Houses, Inc., 211 F.3d 306,
313 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Granite Rock Co. v. Int'l Brotherhood of Teamsters,
130 S. Ct. 2847 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Hooters of America, Inc. v. Phillips, 173 F.3d 933
(4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re: Currency Conversion Fee Antitrust Litigation,
Cause No. 05 Civ. 7116 (S.D. N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Kendall v. Watkins, 998 F.2d 848, 851
(10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Morrison v. Amway Corp., 517 F.3d 248, 254
(5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Walker v. Ryan's Family Steak Houses, Inc.,
400 F.3d 370 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

Wash. Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260,

263 (5th Cir. Miss. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Williams v. Cigna Fin. Advisors, 197 F.3d 752, 760-761
(5th Cir. Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

<u>STATE CASES</u>

Currey v. Lone Star Steel Co., 676 S.W.2d 205, 213
(Tex. App.–Ft. Worth 1984, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Hazelwood v. Mandrell Indus. Co., 596 S.W.2d 204,
206 (Tex. Civ. App.--Houston [1st Dist.] 1990,
writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re AdvancePCS Health L.P., 172 S.W.3d 603,
605 (Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Dillard Dep't Stores, Inc., 186 S.W.3d 514,
515 (Tex. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re FirstMerit Bank, N.A., 52 S.W.3d 749, 757
(Tex. 2001) (orig. proceeding) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Halliburton Co., 80 S.W.3d 566, 571 (Tex.
2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11, 13

In re Morgan Stanley & Co., 293 S.W.3d 182, 185
(Tex. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Poly-America, L.P., 262 S.W.3d 337, 352
(Tex. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n,
300 S.W.3d 746, 751 (Tex. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pony Express Courier Corp. v. Morris, 921 S.W.2d
817, 821 (Tex. App.–San Antonio 1996, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Southwestern Bell Tel. Co. v. DeLanney, 809 S.W.2d
493, 498 (Tex. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Tri-Star Petrol. Co. v. Tipperary Corp., 107 S.W.3d
607 (Tex. App. – El Paso 2003, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## FEDERAL STATUTES

Federal Arbitration Act, 9 U.S.C. §1 *et seg* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

9 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

29 U.S.C. § 626(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

29 C.F.R. §825.220(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## STATE STATUTES

Tex. Civ. Prac. and Rem. Code § 171.001(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## OTHER

"Banks vs. Consumers (Guess Who Wins)," Business Week,
June 5, 2008, Pl. App. 47-76. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Policy Statement on Mandatory Binding Arbitration of
Employment Discrimination Disputes, EEOC Notice No. 915.00
(July 10, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SAMANTHA DIGGS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:12-CV-01612-L** |
| | § | |
| **CITIGROUP, INC.** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS AND COMPEL ARBITRATION AND BRIEF IN SUPPORT**

NOW COMES Samantha Diggs,  Plaintiff in the above-referenced action, and files this

her Response to Defendant's Motion to Dismiss and Compel Arbitration and Brief in Support,

and in support thereof would show the Court as follows:

**I.**

**Introduction**

The Court should deny the Motion to Compel Arbitration before the American

Arbitration Association (the "AAA").  The agreement is unenforceable because it was procured

either by fraud or due to a mutual mistake of fact, is substantively unconscionable, and violates

public policy.

-1-

+

## II.

## <u>Background Facts</u>

Plaintiff began working for either Defendant or its subsidiary, Citicorp Credit Services, Inc. (USA)("CCSI").  She filed this action complaining of FMLA violations and pregnancy discrimination following various acts leading up to her termination immediately upon returning to work after a hospitalization for a fall and pregnancy complications.  Original Complaint, ¶4.01-12.  Her manager told her she was under orders to fire her if she missed any more work due to herself or her children.  Original Complaint, ¶4.12.

Defendant has asked this Court to compel arbitration before the AAA based on a collection of compulsory arbitration policies contained in its evolving Employee Handbook.  The original Handbook provides in relevant part:

> **2. Appointment of neutral arbitrator**
>
> The AAA shall appoint one neutral arbitrator from its Employment Dispute Resolution Roster unless both parties request that a panel of three (3) arbitrators be appointed. If the parties can't agree on the number of arbitrators, the AAA shall have the authority to determine the number of arbitrators. In the event a panel of arbitrators is appointed, all decisions of the panel must be by a Majority and the use of the word "arbitrator" shall refer to the panel.  It's the intent of the Company that the prospective arbitrators be diverse, experienced, knowledgeable with respect to employment-related claims, *neutral*, and duly qualified to serve as arbitrators under the AAA's Rules.

Defendant's Appendix at 6 (*emphasis added*).  The expectation of the parties that the arbitrator should actually be neutral and fair is further emphasized in ¶3, which provides in relevant part:

### 3. Qualifications of neutral arbitrator

No person shall serve as a neutral arbitrator in any matter in which that person has any financial or personal interest in the result of the proceeding. Prior to accepting appointment the prospective arbitrator shall disclose any circumstance likely to prevent a prompt hearing or to create a presumption of bias. Upon receipt of such information, the AAA either will replace that person or communicate the information to the parties for comment. Thereafter, the AAA may disqualify that person and its decision shall be conclusive.

Defendant's Appendix at 6.  Later versions of the Arbitration Policy contain similar provisions, and defer the arbitrator selection procedure completely to AAA rules.  Defendant's Appendix at 12, ¶¶ 2-3,

## III.

## <u>AAA Arbitration Has Repeatedly Proved Unfair</u>

Courts have traditionally enforced mandatory arbitration policies in this State and under the Federal Arbitration Act, 9 U.S.C. §1 *et seg.,* on the assumption that arbitration offers a fair and faster alternative to traditional litigation.  Recent litigation and statistical evidence have uncovered powerful evidence to the contrary.

Using national information obtained through the AAA by virtue of disclosures mandated by California law, Cornell University Professor and lawyer Alex Colvin has reviewed thousands of AAA employment arbitrations, and offered affidavit testimony in another case filed in the Northern District.[1]  His complete opinions are contained in his affidavit, which is included at Appendix. pp. 1-7.  Briefly, however, Dr. Colvin has confirmed through statistics that AAA

---

[1]*Ameser v. Nordstrom,* Cause No. 3:09-CV-0395-G in the Northern District of Texas.

employment arbitrations and arbitrators through compelled agreements are systematically biased against employees.  Summarizing his research findings, which have been peer reviewed, Dr. Colvin has found:

- The employee win rate in arbitrations was only 21.4%, compared to win rates of 36.4% in federal court, or 43.8% in state court for discrimination cases.

- In cases where a recovery was obtained, the mean award in arbitration was only $109,858, versus $394,223 for federal litigation, or $595,594 for state cases.

- Combining win rates and damage awards, the expected outcome in arbitration was only $23,548, versus an expected outcome of $143,497 for federal court, and $260,871 for state court.

- Thus, an employee required to use AAA employment arbitration can expect to recover only 9% of the amount he could get for his claims in state court, or 16.4% of his expected recovery in federal court.

- These results are statistically significant, so that Dr. Colvin can say with 99% certainty that AAA arbitrations are biased against employees in both their outcomes, and that damage awards are smaller.

- Independent studies have shown employment arbitrators to be significantly less likely to side with employees than other decision makers, including former jurors.

- Arbitrator bias is particularly likely where there is a "repeat player" as the employer.  In such situations, the employee win rate drops to 16.9%, versus 31.6% against one-shot employers.

- Where the employer had used an arbitrator before, the employee win rate fell to 12.0%, showing statistical significance at a 95% confidence level.

- In such cases, the damage expectation also fell, so that the expected recovery for an employee fell to $7,451, or about 5% of the expected recovery in federal court, or 2.9% of the expected recovery in state court.

- Dr. Colvin's conclusion is that the evidence supports the argument that there is a danger of arbitrator bias out of hopes of being selected as the arbitrator for multiple cases.

Plaintiff's App. at pp. 1-7.

Dr. Colvin's report comes at a time when consumer credit card arbitration has also come under scrutiny by the Attorney General of Minnesota.  Diggs requests the Court take judicial notice that similar statistical studies have shown bias by the National Arbitration Forum in the context of credit card consumer disputes, where consumers win just .2% of the time. *See* "Banks vs. Consumers (Guess Who Wins)," Business Week, June 5, 2008, Pl. App. 47-76.  The NAF was sued by the Attorney General for the State of Minnesota for its handling of consumer disputes, and how it promoted its services to credit card companies and their attorneys. In response, the NAF has agreed to a consent decree by which it will no longer handle credit card consumer arbitration disputes.[2] The AAA has announced it will no longer handle such claims as well, apparently under threat of being added to that suit.

There is substantial reason to believe that Defendant was aware of the strong bias of the AAA in finding for employers and large companies that frequent arbitration.  In fact, Defendant is currently the subject of an antitrust lawsuit alleging it conspired with other credit card companies to universally require arbitration of credit card disputes, virtually assuring it would win all such disputes.  The trial court in *In re: Currency Conversion Fee Antitrust Litigation,* Cause No. 05 Civ. 7116 (S.D. N.Y. 2012) recently denied summary judgment to Defendant on these claims. A copy of this decision is included in Plaintiff's appendix at 87.

Based on the statistical findings of Dr. Colvin and the practices uncovered by the Attorney General for Minnesota, Plaintiff believes Citigroup, Inc. and/or CCSI knew, or had reason to know, that arbitration under the AAA would be substantially biased against Diggs both

---

[2]  An article summarizing these proceedings is available online at http://www.businessweek.com/investing/wall_street_news_blog/archives/2009/07/big_arbitration.html. Pl. App. 77.

at the time when it sought to contract for arbitration, and when it filed its motion to compel

arbitration.  Plaintiff specifically pointed out these statistics to Defendant in responding to its

attempt to conference, and its certificate of conference in this respect is, at best, misleading. Pl.

App. p. 106.  Plaintiff requests the right to conduct discovery on the track record of Defendant in

arbitration, as well as AAA overall statistics to further develop this issue before the Court issues

its decision.

## IV.

### Argument

The Court should deny the Motion to Compel Arbitration.  The agreement is

unenforceable  because it was either fraudulently procured or was a mutual mistake, is

substantively unconscionable, and violates public policy.

A party attempting to compel arbitration must establish a valid arbitration agreement

whose scope includes the claims asserted.  *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 605

(Tex. 2005).  Under the FAA, an agreement to arbitrate is valid if it meets the requirements of

the general contract law of the applicable state. *First Options of Chicago, Inc. v. Kaplan*, 514

U.S. 938, 944, 131 L. Ed. 2d 985, 115 S. Ct. 1920 (1995); *In re AdvancePCS Health L.P.*, 172

S.W.3d 603, 606 (Tex. 2005).  Under the FAA, an arbitration agreement may be invalidated and

deemed unenforceable "upon such grounds as exist at law or in equity for the revocation of any

contract."  9 U.S.C. § 2.  Typical contract defenses, "such as fraud, duress, or unconscionability,

may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]."

*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).  Issues related to whether a

binding contract to arbitrate has been formed and, if so, whether there are any viable defenses to

the enforcement of the arbitration agreement are generally determined by state contract law. *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006). The often invoked "policy in favor of arbitration agreements" does not apply when a court is examining the threshold question of whether an arbitration agreement exists. *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 130 S. Ct. 2847 (2010); *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008); *In re Morgan Stanley & Co.*, 293 S.W.3d 182, 185 (Tex. 2009).

Courts conduct a bifurcated inquiry to determine whether parties should be compelled to arbitrate a dispute. First, the Court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable. *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. Miss. 2004).

A. <u>**The Agreement is Unenforceable due to Fraud, Mistake, or Prior Breach.**</u>

In light of the findings of Dr. Colvin, the agreement to arbitrate is unenforceable due to fraud or mistake which touches directly upon the agreement to arbitrate itself. *See Washington Mutual Fin. Group v. Bailey*, 364 F.3d 260, 266 n.4 (5th Cir. 2004). The Employment Arbitration Policy clearly calls for the appointment of a neutral arbitrator, with the apparent expectation of the parties that any proceedings be a fair substitute for rights litigated in court. Defendant's Appendix at 6; Pl. App. p. 109. Defendant retained the right to modify the rules of arbitration, and had a duty of good faith and fair dealing to promulgate or adopt rules which would lead to a fair and neutral proceedings. Defendant's Appendix at 6.

Dr. Colvin's statistics show these promises and/or expectations were never true, in that AAA arbitrations are systematically biased in favor of large employers such as Defendant.

Appendix pp. 1-7.  By requiring arbitration using rules and arbitrators which have proven so substantially biased in its favor, Defendant essentially sought to steal Plaintiff's claims, and leave her with a tip. At a minimum, it has breached its duty to provide rules leading to fair results.

Based on Dr. Colvin's findings, Plaintiff believes Defendant knows, and has known, that it is substantially more likely to win in arbitration, and that this is why it has continued to promulgate its policy both in the context of employment agreements and in connection with its credit card business.  Plaintiff requests the Court permit discovery to determine the outcome of Defendant's arbitrations, and its knowledge as to whether mandatory AAA arbitration favors it over litigation in state and federal court.

Plaintiff was unaware of the systematic bias of AAA in favor of large employers, and relied on the representation of neutrality in her decision to enter the contract.  Pl. App. pp. 110. It was never her intention to simply waive her statutory right to work in a discrimination free workplace. Pl. App. pp. 110.

Even if Defendant was not aware that its arbitration policy was fundamentally flawed through systematic AAA bias, an agreement must be set aside under Texas law where there is a mutual material mistake of fact.  *Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n,* 300 S.W.3d 746, 751 (Tex. 2009). A mutual mistake occurs when both parties to an agreement were under a misconception or ignorance of a material fact.  *Id.* Given the repeated assurances of neutrality and fairness in the Policy as well as the 84% reduction in the value of her claims, the Court must find that such misconceptions were material, and set aside the agreement.

Courts have repeatedly refused to enforce arbitration agreements where either the rules of arbitration or evidence shows systematic bias in favor of the employer.  For example, the court in *Hooters of America, Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999) refused to enforce an arbitration agreement where Hooters failed to promulgate adequate rules of arbitration, choosing instead to make one-sided rules more burdensome to plaintiffs, and then providing that the employee could only pick an arbitrator from a company-approved list.  The result was a system which the court denounced as one where "the selection of an impartial decision maker would be a surprising result."  173 F.3d at 939.  Finding that the plaintiff in that case "could legitimately expect that arbitration would not entail procedures so wholly one-sided as to present a stacked deck," the court rescinded the agreement.  173 F.3d at 940.

The court in *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d. 370 (6th Cir. 2005) followed the decision in *Hooters, supra,* and declined to enforce an arbitration agreement where the defendant selected an arbitration provider for which it supplied 42% of the provider's business, thereby exercising an undue influence over the selection of arbitrators.

In *Tri-Star Petrol. Co. v. Tipperary Corp.*, 107 S.W.3d 607 (Tex. App. – El Paso 2003, pet. denied), the court found that a party exercised undue influence over an accounting firm that had been hired under an arbitration agreement to perform an accounting of production on a natural gas project. The court found that the party's interference constituted a material breach of the arbitration agreement sufficient to justify (1) vacation of the arbitration award based on the accounting and (2) a refusal to order re-arbitration.

**B.**      **The Arbitration Policy is Unconscionable.**

Because arbitration agreements are only valid if they are enforceable under general contract principles, they may be set aside when they are unconscionable. 9 U.S.C. § 2 (arbitration agreements under FAA are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"); Tex. Civ. Prac. and Rem. Code § 171.001(b) (arbitration agreements can be revoked "on a ground that exists at law or in equity for the revocation of a contract"). While the term "unconscionable" has no precise legal definition, *see Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 498 (Tex. 1991), it generally describes a "contract that is unfair because of its overall one-sidedness or the gross one-sidedness of its terms." *Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817, 821 (Tex. App.–San Antonio 1996, no writ) (Gonzales, J., concurring) (*citing Currey v. Lone Star Steel Co.*, 676 S.W.2d 205, 213 (Tex. App.–Ft. Worth 1984, no writ)).  The basic test for unconscionability is whether, considering the parties' general commercial background and commercial needs of the particular case or trade, the clause at issue is so one-sided that it is unconscionable under the circumstances existing at the time the contract was made.  *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001) (orig. proceeding).

Unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002).  Courts may consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision.  *In re Halliburton Co.*, 80 S.W.3d 566, 571-572 (Tex. 2002).

-10-

In this case, the arbitration policy was mandatory, non-negotiable, and made a condition of employment by its express terms. Defendant's App. p. 23; Pl. App. 109.  Although the EEOC has expressed concern about such policies in the past, courts have allowed employers to use such policies. Policy Statement on Mandatory Binding Arbitration of Employment Discrimination Disputes, EEOC Notice No. 915.00 (July 10, 1997); *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002).  Nevertheless, the Court may consider the procedural aspect of the policy when reviewing the substantive unconscionability of the claim.

An arbitration agreement covering statutory claims is valid so long as "the arbitration agreement does not waive substantive rights and remedies of the statute and the arbitration procedures are fair so that the employee may effectively vindicate his statutory rights." *In re Halliburton*, 80 S.W.3d at 572; *In re Poly-America, L.P.*, 262 S.W.3d 337, 352 (Tex. 2008). Where an arbitration policy incorporates a scheme to limit an employer's damages or risk of liability in a fashion where the scales of justice are "tipped so that the employee's benefits under the statute are substantially reduced," the policy cannot be enforced.  *In re Poly-America, L.P.*, 262 S.W.3d 337, 352-353 (Tex. 2008), *quoting Hazelwood v. Mandrell Indus. Co.*, 596 S.W.2d 204, 206 (Tex. Civ. App.--Houston [1st Dist.] 1990, writ ref'd n.r.e.).

Dr. Colvin's statistical evidence demonstrates that mandatory employment arbitration polices requiring use of the AAA are, in fact, substantively unconscionable because they systematically tip the scales in favor of employers. His affidavit concludes with 99% statistical certainty that mandatory employment claims are more likely to be decided in favor of the employer than in state or federal courts, and that even if a plaintiff is able to recover in arbitration, her damages will be less.  His analysis of thousands of AAA cases establishes that

the expected recovery for an employee in mandatory arbitration is only 16% of that expected in

federal court, or 9% versus state court.  Pl. App. pp. 1-7. The expected recovery drops even more

to approximately 12.9% of the expected federal recovery where, as here, Defendant is a large

corporation likely to be viewed as a "repeat player" before the AAA.  Pl. App. p. 5.[3] Defendant's

arbitration policy has essentially stolen Plaintiff's claims, and left her a tip.

### C.    Mandatory AAA Employment Arbitration Violates Public Policy.

In light of Dr. Colvin's statistical findings, it is clear that enforcing mandatory AAA

employment arbitration policies is undermining the public policies of enforcing employment

statutes. *See, In re Poly-America, L.P.*, 262 S.W.3d 337, 352 (Tex. 2008). Whether a contract

violates public policy is a question of law.  *Id.*

The public policy of enforcing employment discrimination laws is well known, and is

frequently protected by statutes or regulations which expressly prevent their substantive waiver.

*See, e.g.* 29 C.F.R. §825.220(d)("Employees cannot waive, nor may employers induce

employees to waive, their rights under FMLA."); 29 U.S.C. §626(f)(ADEA non-waiver

provision); *see also, In re: Poly-America, L.P.,* 262 S.W.3d 337 (noting courts view anti-

retaliation provisions of Worker's Compensation laws to be non-waivable).  Case law also

confirms an employee may not be required to waive Title VII rights as a condition of

employment.  *See e.g. Adams v. Philip Morris, Inc.*, 67 F.3d 580, 584 (6th Cir. 1995) ("It is the

general rule in this circuit that an employee may not prospectively waive his or her rights under

either Title VII or the ADEA."); *Kendall v. Watkins*, 998 F.2d 848, 851 (10th Cir. 1993)(same).

---

[3]The win rate for repeat players of 16.9% times the expected arbitration recovery of
$109,858 divided by the expected recovery in federal court of $143,497.

In cases involving statutory rights, blind enforcement of arbitration agreements would undermine congressional intent as reflected in Title VII and the FMLA. *Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1473 (D.C. Cir. 1997). As the Fifth Circuit explained in *Williams v. Cigna Fin. Advisors,* 197 F.3d 752, 760-761 (5th Cir. Tex. 1999), the whole argument in allowing arbitration of employment disputes rests upon the assumption that arbitrations will be a fair alternative to litigation in the courts. As the Texas Supreme Court recently concurred in *In re: Poly-America, L.P.,* 262 S.W.3d 337 (Tex. 2008):

> An arbitration agreement covering statutory claims is valid so long as "the arbitration agreement does not waive substantive rights and remedies of the statute and the arbitration procedures are fair so that the employee may effectively vindicate his statutory rights."

*Id., quoting In re Halliburton Co.,* 80 S.W.3d 566 (Tex. 2002). Thus, an employee cannot be required as a condition of employment to waive access to a neutral forum in which statutory employment discrimination claims may be heard. *Cole,* 105 F.3d at 1482.

A court cannot enforce an agreement to arbitrate if the specific arbitral forum provided under the agreement does not "allow for the effective vindication of that claim." *Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306, 313 (6th Cir. 2000); *Walker,* 400 F.3d at 313. "At a minimum, statutory rights include both a substantive protection and access to a neutral forum in which to enforce those protections." *Cole,* 105 F.3d at 1482. Thus, where the forum is not neutral, the agreement to arbitrate is unenforceable. *Walker,* 400 F.3d at 313.

Professor Colvin's statistical research shows that employment arbitrations with the AAA under mandatory policies are inherently unfair to employees. By hoodwinking employees such as Diggs into accepting arbitration, the statistics show with a 99% level of confidence she is prejudiced in arbitration both in terms of her likelihood to win, and her expected total recovery.

-13-

Indeed, her expected total recovery in arbitration against any employer is only 16.4% of what she could expect in federal court, and 9% of what she could expect in state court.  Pl. App. 4. Where, as here, she is pitted against an obvious repeat player so that the arbitrator is tempted by the potential fruit of repeat business, her expected recovery drops even further to 12.9% of her expected recovery in federal court.  Since Diggs has shown by competent evidence that the agreement to arbitrate in this case has substantively impaired her ability to enforce her employment rights, the Court should deny the Motion to Compel and refuse to enforce the arbitration policy as a violation of public policy.

### D.    Defendant Contractually Waived Attorney's Fees.

Defendant cannot recover attorney's fees for its motion even if the Court were to grant it's motion by enforcing the Employment Arbitration Policy.  The Policy Defendant seeks to enforce expressly provides:

> **24.    Expenses and fees**
>
> Unless otherwise precluded by applicable law, expenses and fees shall be allocated as follows:
>
> > **e. Legal fees and expenses.**  Each side shall pay its own legal fees and expenses subject to Paragraph 20(b) above.

Defendant's Appendix at ¶12, p. 8.  *See also*, *Id.*. at pp. 14, 21.  Defendant's case law cited in support of earlier applications of its policy reflects courts have enforced this provision against it to preclude any award of attorney's fees.  *See* Defendant's Appendix at 38.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays the Court deny Defendant's Motion to Dismiss and Compel Arbitration, and for general relief.

Respectfully submitted,

**KILGORE & KILGORE, PLLC**


By:   /s/ John H. Crouch, IV
       JOHN H. CROUCH, IV
       State Bar No. 00783906

3109 Carlisle, Suite 200
Dallas, Texas 75204
Telephone:  214/969-9099
Telecopier: 214/379-0844

**ATTORNEYS FOR PLAINTIFF
SAMANTHA DIGGS**


<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that on the 5th day of July, 2012, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system of filing, which will transmit a Notice of Electronic Filing to all counsel of record.


   /s/ John H. Crouch, IV
   John H. Crouch, IV