IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAMANTHA DIGGS, | § | |
|              Plaintiff, | § | |
| | § | |
| v. | § | No. 3:12-CV-1612-L-BK |
| | § | |
| CITGROUP, INC., | § | |
|              Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the District Court's *Order of Reference* (Doc. 10), Defendant's *Motion to Dismiss and Motion Compel Arbitration* (Doc. 6) has been referred to the undersigned for findings, conclusions, and recommendation. After reviewing the motion, relevant pleadings and applicable law, the Court recommends that the motion be **GRANTED**.

**I. BACKGROUND**

This case was filed on May, 24, 2012. On June 14, 2012, Defendant filed its *Motion to Dismiss and Compel Arbitration* (Doc. 6-7) and *Answer to Plaintiff's Complaint* (Doc. 8). Plaintiff filed its response on June 5, 2012. (Doc. 11-12). Subsequently, Defendant filed a reply. (Doc. 13).

*A. Relevant Facts*

Plaintiff was an at-will employee of Defendant Citicorp Credit Services, Inc., from December 1, 2008, until February 22, 2011. (Doc. 1 at 2-4; Doc. 6 at 1). Upon hire, Plaintiff received a Handbook and Arbitration Policy and Principles of Employment, which Defendant customarily distributed to each employee. (Doc. 7-1 at 33). The Arbitration Policy in effect during Plaintiff's employment stated, in part,

> Arbitration [is] the required and exclusive forum for the resolution of all disputes (other than disputes which by statute are not arbitrable) arising out of or in any

way related to employment based on legally protected rights (i.e., statutory, regulatory, contractual, or common-law rights) that may arise between an employee or former employee [. . .] including, without limitation, claims, demands or actions under Title VII of the Civil Rights Act of 1964, [. . .] the Family and Medical Leave Act of 1993, [. . .] and any other federal, state, or local statute, regulation or common-law doctrine regarding employment, employment discrimination, and terms and conditions of employment, termination of employment."

(Doc. 7-1 at 5).[1] The Arbitration Policy also listed, among other things, procedures of initiating arbitration proceedings, requirements for appointment of a neutral arbitrator, qualifications of a neutral arbitrator, and proceeding details and regulations. (Doc. 7-1 at 6-9).[2]

On December 1, 2008, Plaintiff signed the Handbook acknowledgement and the Principles of Employment, verifying that she agreed to and understood the contents. (Doc. 7-1 at 29). Additionally, subsequent to handbook modifications in 2009 and 2011, Plaintiff and all other employees electronically signed receipt and acknowledgment of the updated handbooks, including the Arbitration Policy. (Doc. 7-1 at 31, 33).

On February 22, 2011, Plaintiff's employment was terminated by Defendant. (Doc. 1 at 4). Subsequently, Plaintiff filed suit in federal court, alleging that her termination violated the Family and Medical Leave Act of 1993 (FMLA) and Title VII of the Civil Rights Act of 1964 (Title VII).

### B. Issues Presented

Defendant argues that the Arbitration Policy is a valid and binding contractual agreement which requires this dispute to be resolved exclusively in arbitration. (Doc. 6 at 2-3). Plaintiff, on the other hand, claims that the Arbitration Policy is invalid because it was procured by fraud,

---

[1] 2008 Handbook quoted. Modifications made to the handbook in 2009 and 2011, but no substantial changes to this language. (Doc. 7-1 at 11, 17).
[2] 2008 Handbook quoted. Modifications made to the handbook in 2009 and 2011, but no substantial changes to this language. (Doc. 7-1 at 11, 17).

constitutes a mutual mistake, is unconscionable, or is contrary to public policy. (Doc. 11 at 6). In response, Defendant asserts Plaintiff's arguments are frivolous and requests that sanctions be imposed. Thus, the Court now considers (1) whether there is a valid agreement to arbitrate the dispute between the parties, and (2) whether sanctions are appropriate.

## II. ANALYSIS

### A. The Arbitration Agreement

The purpose of the Federal Arbitration Act (FAA) is to promote federal public policy in encouraging arbitration and to ensure that arbitration agreements are enforced like any other contract. *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). The FAA provides, in part:

> A written provision in any [. . .] contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (West 2012). Accordingly, once a court finds an agreement to arbitrate between the parties, the court is restricted to enforcing the agreement. *See AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986). Additionally, as stated in *Defendant's Motion to Dismiss and Compel Arbitration*, the FAA dictates that any doubts concerning the scope of arbitration should be resolved in favor of arbitration. *See* 9 U.S.C. §§ 1 et seq.; *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983); (Doc. 6 at 4).

When considering a motion to compel arbitration, a court determines (1) the existence of a valid agreement among the parties to arbitrate the dispute, and (2) whether the dispute falls within the scope of the agreement. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir.

2012). Neither party disputes the second prong of this test; therefore, the sole issue before this Court is the existence of a valid arbitration agreement.

It is well-settled that the "fundamental principle [of] arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (*quoting Rent-A-Ctr., W., Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010)). Accordingly, courts apply state contract law when evaluating arbitration agreements. *Carey*, 669 F.3d at 205. Arbitration agreements, like other contracts, are subject to contract defenses such as fraud, duress or unconscionability. *Jackson*, 130 S. Ct. at 2776. Under the FAA, a written arbitration agreement is prima facie valid and must be enforced unless the party opposing arbitration alleges and proves that the arbitration clause was a product of fraud, coercion or any other legal or equitable grounds sufficient to revoke the contract. *Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 341 (5th Cir. 2004).

Plaintiff argues that the arbitration agreement is unenforceable because it was procured either by fraud or due to a mutual mistake of fact, is substantively unconscionable and violates public policy. (Doc. 11 at 6, 12). Plaintiff avers that Defendant's representation of a neutral arbitrator was false. (Doc. 11 at 18). Moreover, Plaintiff contends that she relied on Defendant's representations of an unbiased and fair arbitration process. (Doc. 12 at 113). In support of each of her claims, Plaintiff solely and conclusively relies on a study conducted by Cornell University professor and lawyer, Alexander Colvin. (Doc. 11 at 12).

Mr. Colvin's study challenges the use of arbitration in employment disputes by suggesting that (1) employees win less often in arbitration; (2) employees recover small awards in arbitration; and (3) "repeat players" and employers in arbitration are given an advantage.

(Doc. 11 at 9; Doc. 12).[3] Mr. Colvin's study essentially posits that arbitration is so unfair that an agreement to arbitrate effectively waives an employee's rights under the FMLA and Title VII. (Doc. 12). Moreover, Mr. Colvin's study suggests that arbitration agreements in employment disputes should be held unenforceable. (Doc. 12).

In total reliance on Mr. Colvin's study, Plaintiff states that arbitration is "systematically biased in favor of the employer, and result[s] in much lower damages to employees." (Doc. 12 at 113). Plaintiff claims that this bias effectively waives her FMLA and Title VII rights. (Doc. 11 at 17-18). Plaintiff alleges that Defendant had knowledge of this systematic bias in favor of employers and intended to "steal Plaintiff's claims and leave her with a tip." (Doc. 11 at 13, 17).

Alternatively, Plaintiff states that even if Defendant did not have knowledge of the bias, the agreement is nevertheless unenforceable due to mutual mistake and unawareness of the bias displayed in Mr. Colvin's statistics. (Doc. 11 at 13). Plaintiff also relies on Mr. Colvin's statistics to argue that arbitration agreements in employment disputes are unconscionable and contrary to public policy, due to an inherent unfairness towards employees. (Doc. 11 at 18). Plaintiff argues she would not have agreed to the Arbitration Policy if she had known of the findings in Mr. Colvin's study. (Doc. 12 at 113).

As previously discussed, federal courts have recognized a strong public policy in favor of enforcing arbitration agreements. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985); *Texaco Exploration & Prod. Co. v. AmClyde Engineered Products Co.*, 243 F.3d 906, 909 (5th Cir. 2001). Plaintiff's arguments directly contradict this well-established precedent.

---

[3] Mr. Colvin's study states, in part, that in arbitration, employees win 21.4% of cases, compared to 36.4% in federal court or 43.8% in state court; that employees' recovery is $109,858 in arbitration compared to $394,223 in federal court and $595,594 in state court; and that Mr. Colvin is 99% sure AAA arbitrations are biased against employees. (Doc. 11 at 9; Doc. 12).

Additionally, outside of reliance on Mr. Colvin's studies, Plaintiff has failed to bring forth specific instances of fraud, mutual mistake, unconscionability or violations of public policy in the Arbitration Policy she indisputably signed. Likewise, Plaintiff has failed to cite any cases or provide any evidence to show that mandatory arbitration in employment disputes is so unfair that federal precedent should be disregarded. Rather, Plaintiff has cited three distinguishable cases. (Doc. 11 at 14).[4]

The text of the Arbitration Policy in this case clearly makes arbitration the "required and exclusive forum for the resolution of all employment disputes [. . .] that may arise between an employee or former employee and the Company." (Doc. 7-1 at 5). Plaintiff does not dispute that she signed this agreement, nor does she dispute that her claims fall within the scope of the agreement. Rather, Plaintiff attempts to invalidate the agreement by relying solely on the findings of Mr. Colvin's study. Plaintiff's claims are without merit.

Moreover, as Defendant has noted, courts in this district have repeatedly found this very Arbitration Policy valid and enforceable to arbitrate employment disputes. *See, e.g., Burton v. Citigroup*, 3-03-CV-3033-M, 2004 WL 1285033, at *1 (N.D. Tex. June 9, 2004) (Kaplan, M.J.); *Minter v. Citifinancial, Inc.*, No. 3:302-CV-2264-R, 2003 WL 138085, at *3 (N.D. Tex. Jan. 14, 2003) (Buchmeyer, J.). Additionally, and notably, this district has previously found Plaintiff's counsel's arguments in reliance on Mr. Colvin's studies to be without merit. *See, e.g., Swift v.*

---

[4] Plaintiff cites *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d. 370 (6th Cir. 2005), *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999), and *Tri-Star Petroleum Co. v. Tippary Corp.*, 107 S.W.3d 607 (Tex. App.—El Paso 2003, pet. denied), each where the court refused to enforce an arbitration agreement when there was evidence that Defendant-employer facilitated a biased, one-sided arbitration system. There is no analogous evidence in this case.

*Am. Hospice, Inc.*, No. 3:10-CV-679-M, 2010 WL 3706213, at *1 (N.D. Tex. Sept. 8, 2010) (J. Lynn); (Doc. 13-1).[5]

Accordingly, based on the well-established precedent from the Supreme Court and Fifth Circuit, a plain reading of the Arbitration Policy, and strong federal public policy, the Court recommends that Plaintiff's claims be arbitrated in accordance to the Arbitration Policy.

### *B. Defendant's Request for Sanctions*

Rule 11 of the Federal Rules of Civil Procedure permits a District Court to impose sanctions for frivolous arguments. In light of this Court's clear precedent rejecting the identical arguments Plaintiff raises here, the undersigned finds that sanctions are appropriate in this case. Accordingly, contingent upon the District Judge's acceptance of this recommendation, Defendant should submit supporting documentation regarding the amount of attorney's fees and costs incurred in prosecuting its *Motion to Compel Arbitration and Reply Brief* within 14 days of the date of the District Court's adoption of this Court's Findings, Conclusions and Recommendation.

---

[5] Judge Lynn's order in *Swift* states, "[e]ven if the Court were to accept the studies cited by Plaintiff as admissible and accurate, it would not impact the Court's ruling on Defendant's Motion. There is a strong federal policy in favor of arbitration." (Doc. 13-1 at 2).

## III. CONCLUSION

For the foregoing reasons, it is recommended that Defendant's *Motion to Dismiss and Motion to Compel Arbitration* be **GRANTED**.

**SO RECOMMENDED** on September 13, 2012.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE